**Barbara N. COPELAND, Plaintiff,**

**v.**

**Samuel R. MARTINEZ, Director, Community Services Administration, Defendant.**

Civ. A. No. 76–1156.

United States District Court, District of Columbia, Civil Division.

Aug. 23, 1977.

Rohulamin Quander, Washington, D. C., for plaintiff.

David H. Shapiro, Asst. U. S. Atty., Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN H. PRATT, District Judge.

This matter came on for trial before this Court on June 27, 1977. Having considered

all the evidence, both testimonial and documentary, the Court enters the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. Plaintiff is a black female citizen of the United States who resides in the District of Columbia.

2. Defendant is the Director and chief executive officer of the Community Services Administration (CSA), an agency of the Federal Government.

3. Plaintiff is employed as a GS-11 Program Specialist in the Office of Human Rights (OHR) of the CSA.

4. Plaintiff is not a college graduate and holds no degree from an institution of higher education, although she has a number of college credits.

5. OHR is the CSA component which deals with Equal Employment Opportunity (EEO) programs, both within and outside the CSA.

6. From April 1, 1975, through the end of calendar year 1976, Carlos Ruiz was Associate Director for Human Rights of the CSA. In that capacity, Mr. Ruiz administered OHR and served as plaintiff's supervisor.

7. Plaintiff began her term of federal employment as a GS-5 Clerk Typist in February 1969 with the Office of Equal Opportunity, the predecessor agency of CSA. In February 1970, plaintiff was promoted to Secretary Typist GS-6. Plaintiff was promoted to Administrative Assistant GS-7 in April 1971. In January 1975, plaintiff was retroactively promoted to Program Assistant GS-9 effective July 1973 and to Program Specialist GS-11 effective July 1974, the position she now holds.

8. Plaintiff's last two grade promotions resulted from her filing a grievance and complaint not involving race or sex discrimination.

9. Plaintiff filed no less than nine grievances and EEO complaints against Carlos Ruiz when he was her supervisor.

10. Throughout her employment with the Federal Government, plaintiff has filed numerous grievances and EEO complaints in addition to the one presently before this Court.

11. Plaintiff has consistently used grievances, threats of filing grievances, EEO complaints, threats of EEO complaints, and the EEO process in general to harass her supervisors and improperly to further her career and enhance her office status.

12. During the entire period relevant to this case, blacks comprised 80 percent of the OHR staff and females outnumbered males by a ratio of two to one.

13. While he headed OHR, Carlos Ruiz promoted mostly black females.

14a. There is no credible evidence that Carlos Ruiz denied plaintiff a career ladder promotion to Program Specialist GS-12 because of her race and/or sex or as a reprisal for her filing discrimination complaints previously. Rather, the evidence shows that Mr. Ruiz, objectively and without regard to illegal considerations, concluded that the career ladder for plaintiff's position ended at the GS-11 level, a conclusion which was later supported by the CSA Director of Personnel based on an objective and independent desk audit of plaintiff's position.

b. The audit of plaintiff's position was independent of OHR and totally in accordance with procedures established by the Civil Service Commission.

15. There is no credible evidence that Carlos Ruiz denied plaintiff the first merit promotion of which she complains because of her race or sex or as a reprisal for filing discrimination complaints previously. Rather, the merit promotion announcement resulted in no selection when Mr. Ruiz, objectively and without regard to illegal considerations, asked for a wider search for candidates because the qualified list, on which plaintiff was rated lower than the other candidate, contained only two names, a practice that was common when qualified lists contained less than three names.

16a. There is no credible evidence that Carlos Ruiz denied plaintiff the second mer-

it promotion of which she complains because of her race or sex or as a reprisal for her filing discrimination complaints previously. Rather, Mr. Ruiz selected a white female because she was rated highest on the qualified list on which plaintiff was rated lowest.

b. With respect to the second merit promotion of which plaintiff complains, Mr. Ruiz, in the supervisory evaluation which was factored into the qualified list rating, had rated a black female higher than the successful white female.

17. There is no credible evidence that Carlos Ruiz denied plaintiff the third merit promotion of which she complains because of her race or sex or as a reprisal for her filing discrimination complaints previously. Rather, Mr. Ruiz selected a black female because she was rated highest on the qualified list on which plaintiff was rated lowest.

18. Carlos Ruiz' decision regarding each merit promotion of which plaintiff complains was blind as to race, sex, and plaintiff's history of filing complaints and grievances; when Mr. Ruiz made a selection, he selected the highest rated of the qualified candidates solely because the candidate was rated highest, following his unerring practice and irrespective of his personal views; when he asked for a wider search, he followed a common practice without regard to illegal considerations.

19a. A black female experienced personnel official compiled the qualified lists on which Carlos Ruiz based his decisions regarding the merit promotions of which plaintiff complains. She gave each candidate scores in various categories based on her review of the candidate's federal employment application (Standard Form 171) and supervisor's evaluation. The supervisor's evaluation counted for a maximum of 15 points out of 100 points.

b. Carlos Ruiz was the supervisor of each candidate rated by the personnel official.

c. Carlos Ruiz rated plaintiff "not ready" for promotion in his supervisory evaluation of her.

20. There is no credible evidence to support plaintiff's allegations that she was denied training because of her race or sex or as a reprisal for her filing discrimination complaints previously. Rather, plaintiff was denied training because of the heavy workload of OHR, because of her capabilities or lack thereof, because of her attitude toward her work and supervisors, because of budget limitations, or because all requests for individual training were being denied, without regard to illegal considerations.

21. There is no credible evidence to support plaintiff's allegations that she was denied the opportunity to perform at her full potential and harassed by her supervisors because of her race and sex or as a reprisal for her filing discrimination complaints previously.

22. Plaintiff's testimony contained no evidence of illegal discriminatory treatment other than her bald, abstract, and repetitive allegations of the same.

23. The testimony of plaintiff's two witnesses other than herself contained absolutely no evidence of sex discrimination; one witness spoke in abstract terms of reprisal, and both spoke of race discrimination in such terms.

24. Both of plaintiff's nonparty witnesses were shown to be intensely biased against Carlos Ruiz. Both had filed several individual grievances and EEO complaints against Ruiz. One, O. Marion Jones, was shown to have designs on Ruiz' job as Associate Director, a fact he first denied but later admitted.

25. The testimony of plaintiff and Mr. Jones, their demeanor on the stand, and the documentary evidence submitted by both plaintiff and defendant demonstrated that both were completely incredible as witnesses. One factor affecting the Court's assessment of their credibility was the showing and admission by plaintiff and Mr. Jones that they had fabricated and submitted a supervisory rating of plaintiff by Mr. Jones misrepresenting that Mr. Jones was her su-

pervisor and that plaintiff had misrepresented on a Standard Form 171 that Jones, rather than Carlos Ruiz, was her supervisor.

26. To the extent that the testimony of plaintiff's nonparty witness other than Mr. Jones was relevant, it was not credible.

27. The testimony of defendant's witnesses was entirely credible and supported, complemented, and corroborated by the testimony of other witnesses and by documentary evidence.

28. The evidence demonstrates conclusively that plaintiff and Mr. Jones intentionally conducted a vendetta against Mr. Ruiz and other members of the CSA management, harassing them by virtually every means available including use of the EEO process to bring baseless charges of discrimination.

29. This civil action is an integral part of plaintiff's vendetta against Mr. Ruiz and the CSA management; it is the culmination of a long series of intentionally vindictive and abusive actions taken to harass her superiors.

30. Plaintiff's allegations of discrimination are baseless and frivolous.

31. Plaintiff acted vexatiously, maliciously, and in bad faith in bringing and maintaining this action and has intentionally abused the judicial process.

### Conclusions of Law

1. Plaintiff failed to establish even a *prima facie* case of discrimination based on sex and/or race or as to reprisal. The defendant amply demonstrated that no discrimination because of race or sex and no reprisal were involved in the treatment of plaintiff. As a result, the case must be dismissed with judgment for the defendant. *See McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Hackley v. Roudebush,* 171 U.S.App. D.C. 376, 520 F.2d 108 (1975).

2. Moreover, the Court having found that plaintiff has brought this action in bad faith, with an intent to harass her supervisors and generally vex the defendant through her abusive conduct, and that such action constitutes an intentional abuse of the judicial process by plaintiff, the Court awards defendant his costs of this litigation including reasonable attorneys' fees. The Court recognizes that attorneys' fees are not ordinarily recoverable by prevailing parties in American litigation.[1] However, the instant case falls well within the historically established exception to the American Rule in that "the losing party [here] has 'acted in bad faith, vexatiously, wantonly [and] for oppressive reasons'." *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975), *quoting F. D. Rich Co. Inc. v. United States ex rel Indus. Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974).[2] Further, the Court notes that this same standard has been applied (and fees awarded thereunder) to an application for attorney's fees of a prevailing title VII defendant in the private sector. *See Carrion v. Yeshiva Univ.,* 535 F.2d 722 (2nd Cir. 1976); *U. S. Steel Corp. v. United States,* 519 F.2d 359 (3rd Cir. 1975). Title VII applies equally to the public sector as the private sector; the rights of the parties are the same whether the action stems from a situation in federal employment or in employment in other sectors of the economy. *See Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). Therefore, this Court, applying the same standards for attorneys' fees awards in the instant case as have been previously established, awards defendant his reasonable attorneys' fees upon proof of the same within a reasonable time.[3]

3. The Court awards defendant such costs as he may have expended in litigating

---

1. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 262, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).

2. *See also Burgess v. Hampton,* 73 F.R.D. 540 (D.D.C.1977); 6 Moore's Federal Practice ¶ 54.-77(2), at 7109 (1976).

3. In awarding reasonable attorneys' fees to the Government, the Court expressly relies on equitable considerations, implicit in the American Rule, separate and apart from the statute. Ti-

**1182**

this action upon proof of same. *See* Fed.R. Civ.P. 54(d).

An Order consistent with the foregoing has been entered this day.

tle VII explicitly allows courts in their discretion to grant attorneys' fees to "the prevailing party, other than the Commission (Equal Employment Opportunity Commission) or the United States." 42 U.S.C. § 2000e-5(k). This section was part of the 1964 Civil Rights Act which outlawed private employment discrimination. It was then incorporated by reference in the 1972 amendments to the Act, which extended title VII's protections to federal employees. It seems clear that an agency of the federal government acting as a party defendant in a title VII suit must be entitled to at least the same nonstatutory traditional remedies available to private employers in the same circum-

stance. See discussion of legislative history in *Grubbs v. Butz*, 548 F.2d 973, 976 & n.15 (D.C. Cir. 1976). The legislative history of the 1972 amendments is completely silent as to any intent of such amendments to ban or to allow awards of attorneys' fees for prevailing governmental agency defendants. Therefore, without explicit congressional action to the contrary, the customary fee rules outlined in *Alyeska, supra*, apply, and defendant in the instant case is entitled to fees under that rule. *See Carrion v. Yeshiva Univ. supra; Burgess v. Hampton, supra; U. S. Steel Co. v. United States*, 519 F.2d 359 (3rd Cir. 1975).