**Barbara N. COPELAND, Appellant,**

v.

**Samuel R. MARTINEZ, Director Community Services Administration,**
**(two cases).**

**Nos. 77–2059, 77–2060.**

United States Court of Appeals,
District of Columbia Circuit.

Argued 16 Nov. 1978.

Decided 24 July 1979.

Charles Stephen Ralston, New York City, with whom Alexander G. Park, Washington, D. C., and Bill Lann Lee, New York City, were on the brief, for appellant.

Alice L. Mattice, Atty., Dept. of Justice, Washington, D. C., a member of the bar of the Supreme Court of Massachusetts pro hac vice by special leave of Court with whom Earl J. Silbert, U. S. Atty., Barbara Allen Babcock, Asst. Atty. Gen., and Robert E. Kopp, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellee.

Charles E. Hill and Douglas L. Parker, Washington, D. C., were on the brief, for amicus curiae, urging reversal.

Also Paul Blankenstein, Atty., Dept. of Justice, Washington, D. C., entered an appearance, for appellee.

Before WRIGHT, Chief Judge, and McGOWAN and WILKEY, Circuit Judges.

Opinion for the Court filed by WILKEY, Circuit Judge.

WILKEY, Circuit Judge:

The sole question in this appeal is whether the District Court may award attorneys' fees to the United States in a case where it has been sued "vexatiously and in bad faith" under Title VII of the Civil Rights Act of 1964. Appellant maintains that such an award is barred by the plain language of the provision for attorneys' fees contained in the Act. We disagree. In light of the Act's legislative history and underlying purposes, we think that it left undisturbed the equitable principles which historically have permitted a court discretion to award attorneys' fees in circumstances like those of this case. Accordingly, we affirm the judgment of the district court.[1]

## I. FACTS

The facts of this case, as they were found by the trial court, are not disputed and may be recounted briefly. Plaintiff-appellant, Ms. Copeland, is a black woman employed by the Community Services Administration. Since 1974 she has worked as a program specialist of grade GS–11 in the Office of Human Rights, previously she held other positions with the CSA and its predecessor agency, the Office of Equal Opportunity. Plaintiff's two most recent promotions· were the result of filing grievances unrelated to racial or sex discrimination.

From April 1975 through December 1976 plaintiff's supervisor was Carlos Ruiz, the Associate Director for Human Rights at CSA, against whom plaintiff filed unsuccessfully some nine grievances and Equal Employment Opportunity (EEO) complaints. A complaint filed with the CSA on 27 June 1975 is the subject of this suit. It alleged, *inter alia,* that plaintiff was denied career ladder promotions and merit promotions, was denied the opportunity for training, and was harassed by her supervisors, all because of her race and sex.

After a trial the district court found that plaintiff had "failed to establish even a *prima facie* case of discrimination."[2] The court observed that at all relevant times blacks comprised 80 percent of the staff of the Office of Human Rights, that women outnumbered men by a ratio of two to one, and that Ruiz had "promoted mostly black females."[3] The court specifically found that plaintiff had proffered "no credible evidence" to substantiate her allegations. Rather, the evidence showed that the promotions in question had been denied for wholly objective and permissible reasons.

Finding, moreover, that the plaintiff had "acted vexatiously, maliciously, and in bad faith"[4] in maintaining the suit, and in so doing had "intentionally abused the judicial process,"[5] the district court awarded the government reasonable attorneys' fees as part of its costs. The court found specifically that plaintiff had presented "no evidence" of discrimination "other than her bald, abstract, and repetitive allegations."[6] Both of plaintiff's witnesses "were shown to be intensely biased" against Mr. Ruiz; and one admitted to "hav[ing] designs" on Mr. Ruiz's job.[7] Plaintiff and this witness were "completely incredible" and were found to be "conduct[ing] a vendetta" against Mr. Ruiz and others in the CSA management, "harassing them by virtually

1. Judge Pratt's opinion is reported at 435 F.Supp. 1178 (D.D.C.1977).

2. *Id.* at 1181.

3. *Id.* at 1179.

4. *Id.* at 1181.

5. *Id.*

6. *Id.* at 1180.

7. *Id.*

every means available including use of the EEO process to bring baseless charges of discrimination." [8] The instant suit, the court concluded, was the "culmination of a long series of intentionally vindictive and abusive actions taken to harass [plaintiff's] superiors." [9] ·

The district court relied, in making the award, on traditional equitable principles, "separate and apart from [Title VII]," [10] permitting an award of fees to a litigant if the losing party has acted in bad faith. Plaintiff, *not disputing the district court's finding of bad faith,* brought this appeal solely to review the legal question whether the attorneys' fee provision of Title VII permits an award to a government defendant "under any circumstances." [11]

## II. ANALYSIS

### A. *The American Rule and Its Exception in Cases of Bad Faith*

Although it is the general rule in the United States that in the absence of a statute [12] or enforceable contract [13] providing otherwise, each litigant pays his own attorneys' fees, [14] there exist certain well-settled exceptions permitting an award of fees in particular situations. Thus a court may permit a party preserving or recovering a fund, benefiting others in the same manner as himself, to recover his costs, including attorneys' fees, out of the fund or directly from the other parties enjoying the benefit. [15] Also, "a court may assess attorneys' fees for the 'willful disobedience of a court order . . . as part of the fine to be levied on the defendant . . . .' " [16] Finally, and at issue in this case, a party ordinarily may be permitted his attorneys' fees "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .' " [17]

The rationale for "fee-shifting" in instances of bad faith is essentially punitive. [18] It is contemplated that the assessment of fees in such cases will deter abusive litigation in the future, thereby avoiding harassment and protecting the integrity of the judicial process. Of course, recovery of fees incidentally compensates the prevailing party for costs which should not have been incurred, and to that extent it is not inconsistent with the presumption underlying the general rule disfavoring fee awards, that the parties act in good faith, although not with perfect knowledge of the merits of their claims. Relying upon this exception, courts have assessed attorneys' fees against

8. *Id.* at 1180–81.

9. *Id.*

10. *Id.* at 1181 n. 3.

11. Brief for Plaintiff at 4.

12. *See* note 28 *infra.*

13. *See, e. g., Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).

14. *See Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 415, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

15. *See Alyeska,* 421 U.S. at 257–58, 95 S.Ct. 1612; *Hall v. Cole,* 412 U.S. 1, 5–6, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 391–92, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed.

1184 (1939); *Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1882).

16. *Alyeska,* 421 U.S. at 258, 95 S.Ct. at 1622 (quoting *Fleischmann Distilling Corp.,* 386 U.S. at 718, 87 S.Ct. 1404 (citing *Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 426–28, 43 S.Ct. 458, 67 L.Ed. 719 (1923))).

17. *Alyeska,* 421 U.S. at 258–59, 95 S.Ct. at 1622 (quoting *F. D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974); *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402 n.4, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); *Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); *Bell v. School Bd.,* 321 F.2d 494 (4th Cir. 1963); *Rolax v. Atlantic Coast Line R.,* 186 F.2d 473 (4th Cir. 1951); 6 J. Moore, Federal Practice, ¶ 54.77(2), at 1709 (2d ed. 1972). *See generally* Dawson, *Lawyers and Involuntary Clients in Public Interest Litigation,* 88 Harv.L.Rev. 849, 889–95 (1975).

18. *Hall v. Cole,* 412 U.S. at 5, 93 S.Ct. 1943.

both plaintiffs and defendants shown to have acted in bad faith.[19]

 In the instant case it is not disputed that plaintiff acted in bad faith in bringing her Title VII suit, nor is it disputed that factually this case falls well within the equitable exception permitting an award of fees when compelled by "overriding considerations of justice." [20] That is, of course, not an end to the matter, "for even where 'fee-shifting' would be appropriate as a matter of equity, Congress has the power to circumscribe such relief." [21] Although "Congress has not repudiated the judicially fashionable exceptions to the general rule against allowing substantial attorneys' fees," [22] still, as the Supreme Court restated in *Alyeska Pipeline Service Co. v. Wilderness Society*, "the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards [in suits brought under federal law] are matters for Congress to determine." [23]

 Plaintiff contends that Congress in this case has foreclosed an award of fees to the United States "under any circumstances." [24] The putatively preemptive language is contained in § 706(k) of the Civil Rights Act of 1964,[25] which was made applicable to employment discrimination suits against the federal government in 1972 by the addition to Title VII of § 717(d).[26] Section 706(k) provides as follows:

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.[27]

Title VII is thus one of numerous statutes "granting or protecting various federal rights" [28] which contain express exceptions to the general rule against recovery of attorneys' fees. Much of the law governing fee awards under § 706(k) is settled. Thus, an individual prevailing as a plaintiff in an employment discrimination suit, including one brought against the federal government, "ordinarily is to be awarded attorney's fees in all but special circumstances." [29] Also, the provision has been construed to permit an award of fees to a private employer who prevails, upon a finding that a suit, including one brought *by* the United States, was "frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." [30]

Plaintiff naturally concedes that had her suit been one against a private employer the award of attorneys' fees would have been appropriate. Plaintiff argues rather plausibly, however, that the language of § 706(k), allowing fees to prevailing parties *"other than the Commission or the United States,"* [31] may fairly be read as a general prohibition of awards in favor of the feder-

---

19. *See* Dawson, *supra* note 17, at 890 nn. 155–56 (citing cases).

20. *Fleischmann Corp.*, 386 U.S. at 718, 87 S.Ct. 1404.

21. *Hall v. Cole*, 412 U.S. at 9, 93 S.Ct. at 1948.

22. *Alyeska*, 421 U.S. at 260, 95 S.Ct. at 1623.

23. *Id.* at 262, 95 S.Ct. at 1624.

24. Brief for Plaintiff at 6.

25. 42 U.S.C. § 2000e–5(k) (1976).

26. Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, sec. 11, § 717, 86 Stat. 103, 111, 42 U.S.C. § 2000e–16(d) (1976).

27. 42 U.S.C. § 2000e–5(k) (1976).

28. *Alyeska*, 421 U.S. at 260 & nn. 33–35, 95 S.Ct. at 1623 (collecting statutes); *Christianburg Garment Co.*, 434 U.S. at 415–16 nn. 5–7, 98 S.Ct. 694 (collecting statutes).

29. *Id.* at 417, 98 S.Ct. at 698 (footnote omitted); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). *See also Northcross v. Board of Educ.*, 412 U.S. 427, 428, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973).

30. *Christianburg Garment Co.*, 434 U.S. at 421, 98 S.Ct. at 700.

31. 42 U.S.C. § 2000e–5(k) (1976) (emphasis added).

al government. We do not find the statutory language so unambiguous, however. Moreover, nothing in the concededly sparse legislative history evinces any intent to extinguish, in suits involving the federal government, the historic power of equity courts to assess attorneys' fees against a party who has acted in bad faith.[32] And we decline to infer such an intent, especially when to do so would plainly contradict one of the acknowledged purposes of § 706(k)— "to 'deter the bringing of lawsuits without foundation.' "[33]

### B. Congressional Intent Governing § 706(k)

■ The parties have fashioned predictably differing arguments from four sorts of evidence of what Congress may be supposed to have intended. We review in turn (1) the language of § 706(k), (2) its legislative history and that of comparable provisions, (3) probable inferences from the structure of the Civil Rights Act of 1964, and (4) the apparent purposes underlying the fee provision.

### 1. Statutory Language

Until Title VII was amended by the Equal Employment Opportunity Act of 1972, it did not permit employment discrimination suits against the federal government. Consequently, prior to the amendments, the United States (or the Equal Employment Opportunity Commission) could appear in a Title VII suit *only as a plaintiff,* bringing or intervening in a suit on behalf of a private or nonfederal government employee.[34] *These were the only instances to which the language affecting fee recovery by the U.S. could apply.* And in these instances, if the United States or the Commission prevailed in the suit, it clearly could not recover attorneys' fees under § 706(k) in the same manner as other prevailing plaintiffs could.

Federal employment discrimination was proscribed by § 717 added to the Civil Rights Act of 1964[35] by a 1972 amendment.[36] Section 717(c)[37] permits an aggrieved employee to file a civil action in a federal court seeking review of his claim of employment discrimination after relief has been denied in the agency which is alleged to have discriminated. Sections 706(f) through (k), governing various procedural matters, were incorporated by § 717(d)[38] "as applicable" to suits by federal employees. Section 706(k) is, of course, the attorneys' fees provision with which we are concerned.

Plaintiff, somewhat indifferent to the manner in which the various provisions were accreted, argues that their intended operation is apparent. Plaintiff supposes initially that the United States was prevented by § 706(k) from recovering fees as a plaintiff "under any circumstances." From this plaintiff concludes that § 706(k), made applicable to suits against the federal government by § 717(d), likewise forecloses an award on behalf of the United States as a defendant in all cases. We have already noted that plaintiff's construction is linguistically plausible. It is not, however, the only sensible reading of the statute; nor is it the one we suppose most harmonious with the purposes of the Act.

The government, of course, takes a quite different position. It suggests that the language prohibiting awards to the United States may apply only where the government is a plaintiff, the circumstance contemplated when the language was com-

---

32. *See* notes 40–48 and accompanying text *infra.*

33. *Christianburg Garment Co.,* 434 U.S. at 420, 98 S.Ct. at 699 (quoting remarks of Senator Lausche, 110 Cong.Rec. 13668 (1964)).

34. *See* Civil Rights Act of 1964, Pub.L. No. 88–352, tit. VII, §§ 706, 707, 78 Stat. 259, 261 (current version at 42 U.S.C. §§ 2000e–5, 2000e–6 (1976)).

35. 42 U.S.C. § 2000e–16 (1976).

36. *See* note 26 *supra.*

37. 42 U.S.C. § 2000e–16(c) (1976).

38. 42 U.S.C. § 2000e–16(d) (1976).

posed in 1964. Thus the government opines that § 706(k) may in fact affirmatively authorize the award of attorneys' fees to the United States as a defendant in the same manner as it authorizes the award of fees to a prevailing defendant in the private sector. Whether the language of § 706(k) may be parsed in the somewhat extraordinary manner suggested by the government, the instant case does not require us to decide. We hold only, as the government alternatively argues, that § 706(k) does not preclude a court from awarding the United States its attorneys' fees when it has been sued in bad faith.

We think the excepting language, supposing it applicable to the federal government as a defendant, was meant to exclude the United States only from the *statutory* allowance of fees, governed by the expansive "prevailing party" standard, and to leave

undisturbed the narrow equitable exception in cases of bad faith.[39] This construction appears to us both unstrained and ultimately more consistent with the purposes of § 706(k) than that advanced by plaintiff.

2. *Legislative History*

The parties are in agreement that pertinent legislative history is sparse and fairly unenlightening. Somewhat relevant is a colloquy between Senator Dominick and Senator Javits in the course of debate on the 1972 amendments. Senator Dominick had submitted an amendment to the pending Senate bill which, *inter alia,* would have struck the provision which became § 717(d), incorporating § 706(k). Senator Javits, in turn, introduced an amendment striking that portion of the Dominick amendment, which Senator Dominick accepted.[40] It ap-

---

**39.** Although it might have been rational for Congress in 1972 to have concluded that the United States *as a defendant* should be entitled to its attorneys' fees in the same manner as other defendants, it is improbable that it would have chosen to do so through the language of §§ 717(d) and 706(k). Section 717(d) incorporates § 706(k) "as applicable" to suits against the federal government. It is undisputed that § 706(k) applies to such suits at least insofar as it permits awards to prevailing plaintiffs. We think it fairly implausible that Congress intended through § 717(d) to incorporate all of § 706(k) save for the phrase "other than the . . . United States." Rather, a more sensible reading of the sections is that when the federal government is a defendant, it is a "party" within § 706(k) and as such is excluded from the statutory recovery of fees just as it is as a plaintiff. We are especially hesitant to reach a contrary construction which, having no warrant in the text, is not compelled by an unambiguous Congressional purpose. No such purpose is apparent.

Finally, it may be argued that if the same standard applies to the federal government, whether a plaintiff or defendant, it should in both cases preclude recovery on equitable grounds. Although in some circumstances we might conclude that a statutory provision for attorneys' fees had preempted preexisting equitable grounds, *see Christianburg Garment Co.,* 434 U.S. at 419 n. 13, 98 S.Ct. 694; *cf. Byram Concretanks, Inc. v. Warren Concrete Prods. Co.,* 374 F.2d 649, 651 (3d Cir. 1967), we do not think that is this case, *see* 195 U.S.App.D.C. pp. ——, ——, 603 F.2d pp. 989–990 *infra.*

**40.** Senator Javits, offering the amendment to strike, said:

If you refer to those provisions, insofar as they are applicable, you find that the main point is that where the complainant is suing in court, you have arrived at the stage of the proceeding where he has that remedy, and in such circumstances as the court may deem just, the court may appoint an attorney for the complainant and authorize the commencement of the action without the payment of fees, costs, or security.

Mr. President, that is a very important right for the individual, just as it is a very important right for a Government employee, for the individuals involved are not, in the main, high salaried, in that those who would be likely to sue in these equal employment opportunity cases are fairly modest people.

So I see no reason, Mr. President, why in the one case, to wit, that of the normal complainant who is not a Government employee with a remedy in court, that complainant shall be the beneficiary of a court-appointed lawyer, and not have to pay these costs or securities, and why this provision should be stricken out when it comes to a Federal Government employee who has to sue and is also a person, because that is the generality of the cases, of modest means.

So the motion which I make is to strike out the provision of the Dominick amendment which would withdraw that opportunity from a Government employee. I do not see how we can very well make that distinction.

118 Cong.Reg. at 954 (1972).

Senator Dominick accepted the amendment and stated:

Mr. President, I want to say for the record that this particular amendment language was

pears from the exchange, as we observed in *Parker v. Califano,*[41] that both Senators were concerned that federal employees be assured certain assistance afforded private litigants, including the customary award of attorneys' fees to the prevailing party. That Congress intended to permit prevailing federal employees to recover their attorneys' fees is unexceptionable. The colloquy sheds little light, however, on the matter *sub judice,* except insofar as the Senators, aware that § 706(k) applied to suits against the federal government, may be charged with intending one or another somewhat probable construction of the statutory language. Thus we are again remitted to linguistic argument, and we have already concluded that the text is not dispositive. In sum, we think it fair to say that the 1972 legislative history is unilluminating. We observe merely that our construction is not inconsistent with what little history there is.[42]

More helpful to plaintiff's argument are portions of the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976.[43] The Act permits the courts to award attorneys' fees to the "prevailing party, other than the United States" in suits brought under a number of statutes,[44] at least one of which contemplates suits against the United States.[45] The Senate Report states that the Act "follows the language of Title II and VII of the Civil Rights Act of 1964" and that "[i]t is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act."[46] Moreover, the bill's sponsors in the House of Representatives apparently thought not only that the rule in the 1976 statute was the same as that in the earlier acts, but also that under that rule, "the United States is excluded from any attorneys' fees under any thesis or under any hypothesis."[47]

Although the cited passages from the legislative history of the 1976 Act deserve some weight " 'as a secondarily authoritative expression of expert opinion,' "[48] they are not nearly as persuasive as would be statements made contemporaneously with the enactment of the statute we are construing. Consequently although the question is not free of difficulty, we are not

included, as the specific provisions of the bill deal only with Federal employees for whom we had a different procedure. They go through their own agencies and then they have the right as a Federal employee to go to the civil service board or to go through the Federal court system. The amendment to strike the language was included because the language to be struck ·was thought to be inappropriate to the specialized grievance procedures adopted in committee for Federal employees. A closer reading of sec. 706(g) through (w) [the provisions that would have been stricken by the proposed Dominick amendment] does indicate that language for providing attorney's fees and waiving court costs are applicable.

Therefore, I have no objection to the Senator's amendment, and if he would want to withdraw his yea and nay request, that would be fine with me, and we can accept the amendment.

118 Cong.Rec. 956 (1972).

41. 182 U.S.App.D.C. 322, 337–338, 561 F.2d 320, 335–36 (1977).

42. For a review of such legislative history as exists, see *Parker v. Califano,* 182 U.S.App.D.C. at 335–341, 561 F.2d at 333–39.

43. Pub.L. No. 94–559, 90 Stat. 2641, 42 U.S.C. § 1988.

44. The Act permits an award of attorney's fees to the "prevailing party" in actions brought under seven specific sections of the United States Code: 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986 & 2000d *et seq.*; and 20 U.S.C. § 1681 *et seq. See* 42 U.S.C. § 1988 (1976); H.Rep. No. 94–1558, 94th Cong., 2d Sess. 4 (1976).

45. Civil Rights Act of 1964, Pub.L. No. 88–352, tit. VI, 78 Stat. 252, 42 U.S.C. § 2000d *et seq.* (1976); *Adams v. Richardson,* 156 U.S.App. D.C. 267, 480 F.2d 1159 (1973).

46. S.Rep. No. 94–1011, 94th Cong., 2d Sess. 2, 4 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5912.

47. 122 Cong.Rec. H12152 (daily ed. 1 Oct. 1976) (remarks of Congressman McClory). *See also id.* at H12155 (remarks of Congressman Drinan).

48. *Parker v. Califano,* 182 U.S.App.D.C. at 342, 561 F.2d at 339 (quoting *Bobsee Corp. v. United States,* 411 F.2d 231, 237 n. 18 (5th Cir. 1969)).

convinced by these casual subsequent remarks that Congress, acting in 1972, intended to foreclose an award of attorneys' fees to the United States in such cases as this.

### 3. *Inferences from the Structure of Title VII*

Plaintiff advances a second, somewhat different theory of preemption relying on the Supreme Court's decision in *Fleischmann Distilling Corp. v. Maier Brewing Co.*[49] In *Fleischmann* the Supreme Court held that § 35 of the Lanham Act[50] precluded an award of attorneys' fees as a separate element of recovery in a suit for trademark infringement. The Court reasoned that, since § 35 "meticulously detailed the remedies available to a plaintiff who proves that his valid trademark has been infringed," Congress must have intended the express remedial provisions of § 35 "to mark the boundaries of the power to award monetary relief in cases arising under the Act."[51] Plaintiff contends that, whether or not the legislative history expressly discloses any relevant intent, the reasoning of *Fleischmann* dictates a similar result in this case. Recalling for her minor premise that the Supreme Court in *Brown v. General Services Administration* said that Title VII's "careful blend of administrative and judicial enforcement powers"[52] were intended to be "exclusive and pre-emptive,"[53] plaintiff concludes that the question of attorneys' fees is governed exclusively by § 706(k).

Plaintiff's reliance on *Fleischmann* appears somewhat curious. At issue in *Fleischmann* was the judge-made rule permitting an award of attorneys' fees upon a showing that a trademark had been infringed deliberately or willfully. The practice, though supported by some judicial authority, was not among the customary exceptions to the American rule. The Supreme Court held merely that it would not find an implied exception under a statute which, containing no attorneys' fees provision whatsoever, otherwise exhaustively prescribed the intended relief. The instant controversy is quite different. We are required to decide not whether to create a novel exception, but rather whether Congress intended to abrogate a thoroughly settled one. Setting to one side the effect of § 706(k), we are most reluctant to find that Congress has by implication eliminated sound preexisting grounds for an award of attorneys' fees.[54] Moreover, not only is Title VII's open-ended provision for any "other equitable relief as the court deems appropriate"[55] unlike the "meticulously detail[ed]" remedies under the Lanham Act,[56] but we doubt that even precisely detailed affirmative relief logically implies anything at all about the court's inherent power to award fees to a harassed *defendant.*

The Supreme Court's recent opinion in *Christianburg Garment Co. v. EEOC* confirms our view that, at least apart from the prohibition which plaintiff finds in the language of § 706(k), the remedial scheme of Title VII did not preempt the customary exceptions to the American rule. There the Court said:

> It seems clear, in short, that in enacting § 706(k) Congress did not intend to permit the award of attorney's fees to a

---

**49.** 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).

**50.** 15 U.S.C. § 1117 (1976).

**51.** *Fleischmann Corp.,* 386 U.S. at 719, 721, 87 S.Ct. at 1409.

**52.** 425 U.S. 820, 833, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

**53.** *Id.* at 829, 96 S.Ct. at 1968.

**54.** Our reluctance is akin to the presumption against construing statutes to have abrogated by implication common law rights. *See, e. g.,*

Isbrandtsen Co. v. Johnson, 343 U.S. 779, 783, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952); *St. Regis Paper Co. v. United States,* 368 U.S. 208, 218, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961). *See generally.* 3 J. Sutherland, Statutes and Statutory Construction § 61.01, at 41–42 (4th ed. Sands, ed. 1974).

**55.** 42 U.S.C. § 2000e–5(g) (1976).

**56.** *See also Hall v. Cole,* 412 U.S. at 10, 93 S.Ct. 1943; *Mills v. Electric Auto-Lite,* 396 U.S. at 391, 90 S.Ct. 616.

prevailing defendant only in a situation where the plaintiff was motivated by bad faith in bringing the action. As pointed out in *Piggie Park,* [88 S.Ct. 964, 19 L.Ed.2d 1263, 390 U.S. 400 (1968)], if that had been the intent of Congress, no statutory provision would have been necessary, for it has long been established that even under the American commonlaw rule attorney's fees may be awarded against a party who has proceeded in bad faith.[57]

Thus plaintiff's preemption argument derives no support from *Fleischmann,* and we are once again thrown back upon the language of § 706(k), which we find inconclusive.

### 4. The Purposes of § 706(k)

Finally, we believe an award of attorneys' fees in this case is wholly consistent with the purposes of § 706(k). The Supreme Court had occasion in *Christianburg* to review those purposes, which are vaguely disclosed by what little history there is from 1964. It said:

> The only specific reference to § 706(k) in the legislative debates indicates that the fee provision was included to "make it easier for a plaintiff of limited means to bring a meritorious suit." [58] During the Senate floor discussions of the almost identical attorney's fee provision of Title II, however, several Senators explained that its allowance of awards to defendants would serve "to deter the bringing of lawsuits without foundation," [59] "to discourage frivolous suits," [60] and "to diminish the likelihood of unjustified suits being brought." [61] If anything can be gleaned from these fragments of legislative history, it is that while Congress wanted to clear the way for suits to be brought under the Act, it also wanted to protect defendants from burdensome litigation having no legal or factual basis.[62]

Of course, the Court in *Christianburg* was not construing the language which is here alleged to foreclose a recovery by the government. *Christianburg* dealt with the content of the "prevailing party" standard whose purposes are less directly relevant to this case than the purposes, were they discernible, of the alleged exception for the federal government. Still, inasmuch as the language and history of the exception are inconclusive, it is sensible that the policies framing the section generally should inform as well the construction of its exceptions.

The possibility of tension between the purposes described in *Christianburg* is apparent. The policy question in this case is, simply stated, whether the social benefits of deterring vexatious suits against the government outweigh the social costs arising from the risk that some meritorious suits will be discouraged as well. Plaintiff argues that the Congress in 1972, acutely aware of both the pervasiveness of discrimination in federal employment and inadequacy of existing remedies, could not have intended to create the "deterrent of the prospect of liability for fees if the employee loses." [63] Such a deterrent is said to be particularly inappropriate inasmuch as the whole initiative for judicial enforcement of Title VII against the federal government lies with the private individual. The EEOC and the attorney general are not permitted to proceed against the government as they are against other employers.[64] Thus the possibility that the prosecution of meritorious claims might be "chilled" by the likelihood of their being mischaracterized as in bad faith is thought especially pernicious.

We think plaintiff's arguments are largely overdrawn. The alleged chill on poten-

---

**57.** 434 U.S. at 419, 98 S.Ct. at 699.

**58.** Remarks of Senator Humphrey, 110 Cong. Rec. 12724 (1964).

**59.** Remarks of Senator Lausche, *id.,* at 13668.

**60.** Remarks of Senator Pastore, *id.,* at 14214.

**61.** Remarks of Senator Humphrey, *id.,* at 6534.

**62.** *Christianburg Garment Co.,* 434 U.S. at 420, 98 S.Ct. at 699–700 (original notes renumbered and reproduced as notes 58–61 *supra* ).

**63.** Brief for Plaintiff at 21.

**64.** *Compare* 42 U.S.C. § 2000e–16(c) *with* 42 U.S.C. § 2000e–5(f).

tially valid litigation would occur only if government employees with meritorious Title VII suits believed that courts were likely so to mischaracterize those suits as to find them not only without merit, but wholly vexatious as well. We do not believe either that courts are likely so thoroughly to misapprehend the character of claims or that prospective plaintiffs are likely to expect such errors. The Supreme Court in *Christianburg* apparently did not suppose there would be an unacceptable chill if prevailing defendants in the private sector were permitted to recover attorneys' fees upon a far lesser showing than bad faith (i. e., that the suit was "frivolous, unreasonable or without foundation.")[65] Plainly, that possibility is considerably more remote here.

Of course, a court must still be wary of indulging *post hoc* characterizations which neglect the apparent prospects of a claim before trial. The cautionary language of the Court in *Christianburg* pertains *a fortiori* in such cases as this:

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a

party may have an entirely reasonable ground for bringing suit.[66]

Thus we contemplate that courts will be appropriately circumspect in finding a party to have acted in bad faith. We doubt that such a finding may be supported without some proof of malice entirely apart from inferences arising from the possibly frivolous character of a particular claim. Only in this manner would we assure a sensible distinction between the contents of the equitable and statutory exceptions to the American rule. If, as seems probable, Congress chose to exclude the United States from the statutory "prevailing party" recovery in all cases, we are obliged to observe closely such a distinction.

Satisfied, then, that a recovery by the United States in this case will not embarrass the policy of enforcement, we are naturally more certain that it will help to discourage those few suits whose only motivation is harassment. The Court recognized in *Christianburg* that though Congress intended that individuals would fully vindicate the antidiscrimination policy of Title VII, still "it is equally certain that Congress entrusted the ultimate effectuation of that policy to the adversary judicial process."[67]

It is the need to preserve the integrity of the judicial process which ultimately, in the face of inconclusive statutory language and legislative history, convinces us that Congress would not have wished to foreclose recovery here. Litigation brought merely to harass is a wholly unredeemed burden and affront to the judiciary. While its unfairness when the defendant is the United States is somewhat more diffuse than the imposition on a private defendant in the same circumstances, it is not more sufferable. We think it unlikely, in light of the purposes of the "bad faith" exception,[68]

---

65. *Christianburg Garment Co.*, 434 U.S. at 421, 98 S.Ct. 694.

66. 434 U.S. at 421–22, 98 S.Ct. at 700.

67. *Id.* at 419, 98 S.Ct. at 699.

68. We are somewhat persuaded in our view by the analogous grounds for recovery of fees contained in Federal Rule of Civil Procedure 37.

Rule 37 authorizes a court in certain circumstances to assess attorneys' fees against a party who has abused the discovery process. The theory is essentially the same as that in this case. Fair and liberal discovery is elementary to civil litigation. To maintain the process, the award of fees operates as a sanction, deterring abusive practices and incidentally compensating the aggrieved party for unnecessary costs.

that Congress intended through § 706(k) to remove the court's discretion to award attorneys' fees in such circumstances as these. When, as here, there is a solidly grounded finding by the trial court of bad faith on the part of the plaintiff, a fact finding which this court has no reason to upset, we have no intention of sanctioning bad faith in judicial proceedings by denying the defendant government its established right to recover attorneys' fees as a deterrent to bad faith litigants.[69]

*Affirmed.*

We doubt it would be argued seriously that § 706(k) preempts a recovery of fees under rule 37. Such a construction would not appear sensible. Rule 37 has a narrow purpose which can be accommodated easily within the framework of § 706(k). Moreover, one would expect Congress intended as much. Likewise, we think it unlikely that Congress intended through § 706(k) to foreclose an award of fees in the exceptional case in which the whole suit is pursued in bad faith. As with rule 37 it is probable, in light of the purposes of the exception, Congress would have left it alone when it adopted § 706(k).

69. Sufficient abuse of the judicial process could overwhelm the courts and destroy the judicial system as an effective branch of government. This, and any discernible degree thereof, such as the bad faith litigation found here, the courts have a constitutional duty to prevent. By our interpretation of the statute involved we have found here no intent of Congress to permit any abuse of the judicial process.