Carl K. BUTLER, Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant-Appellee.

No. 86–3875
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 10, 1987.

---

1. Indeed, being at our last notice free on parole, he clings to habeas standing by his fingernails.

Carl K. Butler, pro se.

Thomas L. Watson, Asst. U.S. Atty., John Volz, U.S. Atty., New Orleans, La., for defendant-appellee.

Before POLITZ, WILLIAMS and JONES, Circuit Judges.

POLITZ, Circuit Judge:

The principal issue on this appeal is whether the United States, through one of its agencies, may be awarded attorney's fees as the prevailing party-defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k). The magistrate before whom the case was tried by consent awarded such fees. For the reasons assigned, we affirm the ruling on the merits and reverse the award of attorney's fees.

### Background

Carl K. Butler, a black male, was employed by the United States Department of Agriculture as a computer clerk. His employment can best be described as strained, erratic, and stormy. The record reflects a stream of incidents including abusive language and conduct toward superiors, insubordination, threats against fellow employees, hostility toward superiors and colleagues, and dereliction of duties. He was twice denied promotions because of his conduct and performance. On July 3, 1984, one day after being reprimanded for using abusive language and threatening a fellow employee, he filed a discrimination charge with the USDA Equal Employment Opportunity Counselor. On March 1, 1985 he was discharged.

In December 1985 Butler filed suit, alleging discrimination in promotion and retaliatory firing. The magistrate dismissed the promotion complaint as untimely because Butler failed to contact the EEO Counselor within 30 days as required by applicable regulations. 29 C.F.R. § 1613.214(a)(1). After trial, at which Butler was represented by appointed counsel, the magistrate found legitimate reasons for the discharge and found no evidence whatever that retaliation was involved. Upon motion, the magistrate awarded the government $8,855.33 in attorney's fees, as prevailing party, under 42 U.S.C. § 2000e–5(k). Proceeding *pro se*, Butler appeals the rejection of his

demands and the award of attorney's fees. We affirm the former and reverse the latter.

## Analysis
### Discrimination Claim

■ We review factual findings by the trial court under the clearly erroneous standard, which obliges us to accept factual findings unless we have a definite and firm conviction that a mistake has been made. Fed.R.Civ.P. 52(a); *United States v. United States Gypsum*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Butler had the burden of showing that he was fired because he lodged a discrimination complaint. 42 U.S.C. § 2000e–3; *McDaniel v. Temple Independent School Dist.*, 770 F.2d 1340 (5th Cir.1985). We find the record replete with evidence that the USDA ended Butler's employment for legitimate, nondiscriminatory reasons. The record reflects a continuum of berating supervisors, harassing co-workers, and performing dismal work. The magistrate erred neither factually nor legally in rejecting Butler's claims.[1] We affirm.

### Attorney's Fees—Statutory

The magistrate awarded the government attorney's fees and costs pursuant to § 706(k) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), which provides in relevant part:

> In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee as part of the costs.... [2]

The Supreme Court has had occasion to clarify several ambiguities in this and the footnoted fee-shifting statutes. Although each statute appears on its face to allow awards equally to prevailing plaintiffs and defendants, the Court concluded otherwise in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Noting sparse legislative history, the Court determined that a prevailing defendant may not recover Title VII attorney's fees under this provision, but may recover such fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421, 98 S.Ct. at 700, 54 L.Ed.2d at 657. The Court concluded that this interpretation supported the stated congressional purpose of encouraging plaintiffs to effectuate the important policies espoused in Title VII and to deter violations of its provisions, without operating as an "incentive to the bringing of claims that have little chance of success." *Id.* at 418, 422, 98 S.Ct. at 698, 700,[3] 54 L.Ed.2d at 657.

Similarly, in *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 401–02, 88 S.Ct. 964, 965–66, 19 L.Ed.2d 1263, 1265–66 (1968), the Court held that a prevailing

---

**1.** The court also properly dismissed Butler's promotion claim as prescribed. *See Oaxaca v. Roscoe*, 641 F.2d 386 (5th Cir.1981).

**2.** Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–3, and the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, contain identical language. Both provide that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

**3.** In *Christiansburg* the Supreme Court cautioned that courts should be careful not to engage in *post hoc* reasoning to find an action frivolous:

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

434 U.S. at 421–22, 98 S.Ct. at 700–01, 54 L.Ed.2d at 657.

plaintiff should recover not only to the extent that the defendant had acted "for purposes of delay and not in good faith," but "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *See also Northcross v. Memphis Board of Education,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (applying *Piggie Park* standard to Title VII cases).

We are aware of no prior decision specifically addressing the question whether the United States may be awarded statutory attorney's fees as the prevailing party-defendant in a Title VII case.[4] On its face the statute appears clearly to preclude such an award. Nevertheless, relying on what she perceived to be congressional intent as reflected in its silence when enacting 42 U.S.C. § 2000e–16 in 1972, the magistrate concluded that the language of exclusion does not apply when the United States is a prevailing defendant. She explained:

> 42 U.S.C. § 2000e–5(k) specifically excludes only the United States or the Commission from receiving an award of attorney fees. At the time of the original enactment of this section of Title VII, a federal employee had no right to sue the United States or any of its agencies based on discrimination in employment. Hence, the language of this portion of Title VII, when originally enacted, dealt only with the United States or EEOC as a party plaintiff. When Congress amended certain sections of the Act in 1972, it is noteworthy that Congress did not amend § 2000e–5(k). Rather, Congress, in waiving the sovereign's immunity to employment discrimination suits, chose to make the head of the department, agency, or unit the appropriate party defendant rather than the United States, 42 U.S.C. § 2000e–16(c), *Hall v. Small Business Administration,* 695 F.2d 175 (5th Cir.1983); *Newbold v. United States Postal Service,* 614 F.2d 46 (5th Cir.1980) [*cert. denied,* 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101

(1980) ]. Because 42 U.S.C. § 2000e–5(k) refers to an award of attorney's fees to the prevailing "party" and because it is not possible for the United States to be a party defendant to a Title VII lawsuit under the terms of 42 U.S.C. § 2000e–16(c), any award of attorney's fees to a prevailing defendant is not an award of attorney's fees to the United States.

■ Although this reasoning has a certain allure and appeal, we cannot accept it. There is usually little need to resort to legislative history to resolve a non-existent ambiguity. It is well-settled that "a statute must be interpreted according to its plain language unless a clear contrary legislative intention is shown." *Alabama v. Marshall,* 626 F.2d 366, 368–69 (5th Cir. 1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981); *Tangipahoa Parish School Board v. United States Department of Ed.,* 821 F.2d 1022 (5th Cir. 1987). The statute before us contains no ambiguity in its exclusion of the United States from receipt of attorney's fees as a prevailing party. The language of exclusion is certain and specific. And an examination of the legislative history does not reflect "a clear contrary legislative intention."

The magistrate painstakingly gleaned the legislative history and found what she perceived to be relevant information. She noted that when Congress made Title VII applicable to the government as an employer, it designated the head of the responsible agency as the appropriate defendant. Equal Employment Opportunity Act of 1972 § 11(c), 42 U.S.C. § 2000e–16(c). The magistrate concluded that this evinced a congressional intent to distinguish the agency head from the United States in the attorney's fee provision. The observation is intriguing but not persuasive. A more likely reading is that Congress intended to centralize all Title VII litigation against the top administrators, avoiding the disruption inherent in suits against lower-level super-

---

4. The decision by our colleagues in the D.C. Circuit in *Copeland v. Martinez,* 603 F.2d 981 (D.C. Cir.1979), which involved an assessment of attorney's fees in favor of the government as a defendant under the American rule, contains an informative legislative recounting that we found instructive.

visors. *See Hall v. Small Business Administration,* 695 F.2d 175 (5th Cir.1983).

The magistrate also found support for her conclusion in the very structure of Title VII. When originally enacted in 1964, Title VII reflected in its prevailing-party standard the legislative goal of protecting potential defendants by deterring employees from bringing frivolous suits. *See Christiansburg,* 434 U.S. at 420, 98 S.Ct. at 699, 54 L.Ed.2d at 656. Because federal employees at that time were not covered by Title VII, congressional exclusion of the United States from receipt of attorney's fees contemplated only situations in which the United States was the plaintiff. When Congress amended Title VII in 1972 to bring federal employees within its protection, no change was made in the language of 2000e–5(k).

We find nothing in the legislative history to indicate that this "inaction" in 1972 was either a result of congressional lapse or a deliberate intent to exclude the United States from the statutory recovery of attorney's fees. Perhaps it was an oversight as some have suggested. On that we do not speculate, leaving that luxury to others. *See,* Note, *The United States as Prevailing Defendant in Title VII Actions: Attorneys' Fees and Costs,* 66 Geo.L.J. 899 (1978). But the legislative reports reflect only a concern that employment discrimination be eradicated in the federal government, where "equal employment opportunity is of paramount significance" and "[t]he prohibition against discrimination by the federal government ... was judicially recognized long before the enactment of the Civil Rights Act of 1964." H.R.Rep. No. 238, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 2137, 2157.

It can be argued that congressional intent to deter frivolous suits applies equally to public and private defendants. *See, e.g.,* Note. ("Denying recovery of attorneys' fees to the Government as a prevailing defendant would force taxpayers, rather than bad faith plaintiffs, to bear the costs of frivolous suits brought against the United States."). There are, however, contrary arguments. The EEOC does not litigate on behalf of federal employees as it does private employees. *Compare* 42 U.S.C. § 2000e–16(c) *with* 42 U.S.C. § 2000e–5(f). Because federal employees lack the benefit of this objective influence, an extra layer of insulation from attorney's fees is reasonable. In addition, government employees "are not, in the main, high salaried, in that those who would be likely to sue in these equal employment opportunity cases are fairly modest people." 118 Cong.Rec. at 954 (1972) (statement of Sen. Javits); *see also* S.Rep. No. 1011, 94th Cong., 2d Sess., 2, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5910 ("In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer."). By comparison, whereas the resources of many potential defendants are so small that frivolous Title VII litigation could threaten their financial security, the federal government need hardly worry.

■ We conclude that the mere fact that Title VII did not originally apply to the United States as an employer does not change the meaning of § 2000e–5(k). Moreover, that Congress did not amend § 2000e–5(k) when it enacted § 2000e–16, allowing suits against the government, is not evidence of a silent intent to change the meaning of the former provision. To the contrary, § 2000e–16(d) expressly incorporates § 2000e–5(k), making the attorneys' fees section applicable in suits against the United States.[5] This reference, if anything, evidences an intent to exclude the government.[6] Lacking sufficient evidence

---

5. Section 11(d) of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16(d), states:

> The provisions of [42 U.S.C. §§ 2000e–5(f) to (k)], as applicable, shall govern civil actions brought hereunder.

6. Once again, the legislative history provides shallow, but positive support. In the course of debate on the 1972 amendments, Senator Dominick submitted an amendment to the pending Senate bill, proposing to strike the provision that became § 2000e–16(d), which incorporates § 2000e–5(k). Senator Javits moved to strike that portion of Senator Dominick's amendment, noting that a federal employee is entitled to the

of contrary intent, we are bound to apply the express language of the statute and conclude that the United States may not recover attorney's fees under 42 U.S.C. § 2000e–5(k).

*Attorney's Fees—American Rule*

The USDA contends that if it is not entitled to statutory attorney's fees, it should be awarded those fees because Butler acted in bad faith. In *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court reaffirmed the American rule permitting attorneys' fees to be awarded to a party sued in bad faith, vexatiously, wantonly, or for oppressive reasons. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 n. 9, 98 S.Ct. 694, 698 n. 9, 54 L.Ed.2d 648 n. 9 (1978). In *Copeland v. Martinez*, 603 F.2d 981 (D.C.Cir.), *cert. denied*, 444 U.S. 1044, 100 S.Ct. 730, 62 L.Ed.2d 729 (1979), the District of Columbia Circuit recognized such an award to the United States under the American rule, in a Title VII setting, for a suit brought vexatiously and in bad faith.[7]

■■■ We agree that courts may award attorney's fees as sanctions for bad-faith litigation, including an award to the United States as defendant in a Title VII case. But the case before us presents no basis for such an award. There is no finding that Butler acted in bad faith or vexatiously or purely to harass the USDA. The magistrate found only that Butler's belief in the validity of his claim was unreasonable. We cannot say that Butler's actions were vexatious, wanton, or oppressive, and we perceive no malice in the litigation. The magistrate complimented the thorough preparation and presentation of the case by appointed counsel. The case does not have the aroma of sanction-worthy litigation.

Finding no legal basis for a statutory award of attorney's fees, and no factual basis for an award of such fees under the American rule, we REVERSE the award of attorney's fees. Otherwise the judgment of the magistrate is AFFIRMED.

---

same incentives to sue as a private employee. 118 Cong.Rec. at 954 (1972).

Senator Dominick, on accepting the proposal, stated his view that "[a] closer reading of [§§ 2000e-(f) to (k) ] does indicate that language for providing attorney's fees and waiving court costs are applicable." 118 Cong.Rec. at 956 (1972); *see Copeland*, 603 F.2d at 987–88 (analyzing same); *Parker v. Califano*, 561 F.2d 320, 333–39 (D.C. Cir.1977) (analyzing legislative history in depth).

Subsequent congressional statements, although worthy of less weight than contemporaneous ones, are nevertheless entitled to careful consideration "as a secondarily authoritative expression of expert opinion." *Bobsee Corp. v. United States*, 411 F.2d 231, 237 n. 18 (5th Cir. 1969). In enacting the Civil Rights Attorney's Fees Awards Act of 1976, the 94th Congress drew heavily on existing attorneys' fees provisions, particularly those of the Civil Rights Act of 1964. Its stated purpose was to extend those provisions "to remedy anomalous gaps in our civil rights laws created by the United States Supreme Court's recent decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), and to achieve consistency in our civil rights laws." S.

Rep. No. 1011, 94th Cong., 2d Sess. 1 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin. News 5908, 5909. Recognizing that a plaintiff who brings a frivolous action could be assessed the defendant's attorneys' fees, Congress apparently assumed that *no* defendant would receive fees absent bad faith, for "[t]his bill thus deters frivolous suits by authorizing an award of attorneys' fees against a party shown to have litigated in 'bad faith' under the guise of attempting to enforce the Federal rights created by the statutes [to which the act applies]." *Id.* at 5912.

**7.** In *Copeland*, the district court found that the defendant had acted "vexatiously, maliciously, and in bad faith," had "intentionally abused the judicial process," had presented "no evidence" of discrimination "other than her bald, abstract, and repetitive allegations," had presented only witnesses who "were shown to be intensely biased" and "completely incredible," and was in short, "conducting a vendetta" against the defendants and "harassing them by virtually every means available including use of the EEO process to bring baseless charges of discrimination. *Copeland*, 603 F.2d at 983–84 (*quoting* 435 F.Supp. 1178 (D.D.C.1977)). None of these findings were or could be made in the case at bar.