**Vincent F. MONTI**

v.

**WARWICK SCHOOL COMMITTEE.**

**No. 88–11–M.P.**

Supreme Court of Rhode Island.

Feb. 21, 1989.

Michael St. Pierre, Revens & DeLuca, Warwick, for plaintiff.

William T. Murphy, Warwick, for defendant.

OPINION

KELLEHER, Justice.

We have issued a common-law writ of certiorari to review a decision of the Board of Regents for Elementary and Secondary Education affirming the refusal of the Warwick School Committee to reimburse the petitioner, Vincent F. Monti, for legal expenses he incurred in successfully defending himself against a five-count indictment charging him with second-degree sexual assault. The alleged victims were young girls who attended the primary school where the petitioner served as the principal. Hereafter we shall refer to the petitioner by his last name and to the Board of Regents as the Regents.

The single, decisive issue in this litigation is whether G.L.1956 (1985 Reenactment) § 9–1–31(a) requires the school committee to reimburse Monti for the legal expenses he incurred in contesting the criminal charges lodged against him.

A hearing officer assigned to the State Commissioner of Education's staff concluded that § 9–1–31(a) applied to both criminal and civil proceedings. The Regents, in re-

jecting the hearing officer's decision, concluded that the hearing officer had misconstrued the clear language of the statute. According to the Regents, the indemnification statute applied only to civil proceedings, the position maintained by the school committee since this controversy first arose. The Regents did suggest that notwithstanding the absence of any authorization in § 9–1–31(a), the school committee had the discretion to reimburse Monti. Before the committee could respond to this proposal, Monti filed this certiorari petition.

When this dispute was before the hearing officer, one of the sponsors of the indemnification legislation indicated that the legislation represented his concern about the teachers in the city of Providence who were "having problems with assaults" and "suits being brought against them for things that would happen in the school." At no time was he thinking in terms of a civil or a criminal suit. He was of the belief that a school committee should take care of the legal fees incurred by a teacher unless the teacher was found to be in the wrong or grossly negligent. The legislator was asked whether it was his intent to save harmless and indemnify any teacher or administrator from any of their acts. His response was, "That is correct." At that point counsel for the school committee moved to strike the response, and the motion was granted.

The school committee had relied to some degree upon an explanation prepared by the legislative council in regard to the extent of the indemnification provisions. The council's explanation noted that a teacher would be "protected against suits for civil damages." In *Berberian v. O'Neil*, 111 R.I. 354, 302 A.2d 301 (1973), we emphasized that any explanation by the staff of the legislative council regarding legislative intent is not conclusive of legislative intent but may be of some assistance in construing a statute.

This court serves as the final arbiter in disputes involving statutory construction. *Lawrence v. Anheuser–Busch, Inc.*, 523 A.2d 864 (R.I.1987). In discharging this responsibility, we are required to determine and effectuate the Legislature's intent and attribute to the statute in question the meaning that is most consistent with its policies or obvious purposes. *Brennan v. Kirby*, 529 A.2d 633 (R.I.1987).

In its pertinent provisions § 9–1–31(a) requires, in essence, that every school committee as well as the Regents protect and save harmless any

"teacher, or any supervisor or administrator thereof from financial loss and expense, including legal fees and costs, if any, arising out of any claim, demand or suit for actions resulting in accidental bodily injury to or death of any person, or in accidental damage to or destruction of property, within or without the school building, or any other acts, including but not limited to infringement of any person's civil rights, resulting in any injury, which acts are not wanton, reckless, malicious, or grossly negligent * * * provided such teacher, supervisor, or administrator, at the time of the acts * * * was acting in the discharge of his (her) duties or within the scope of his (her) employment or under the direction of such school committee or the board of regents."

The critical language in this statute is the indemnification provision that necessitates the reimbursement from losses or expenses, including legal fees, arising out of "any claim, demand or suit."

The phrase "any claim, demand or suit" reminds us that Rule 12(b) of the Superior Court Rules of Civil Procedure requires that

"[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted * * *."

These rules have been in effect in this jurisdiction since January 10, 1966. Essentially a claim is a statement of facts upon

which a plaintiff seeks monetary or equitable relief.

A "demand" may be viewed as a "claim" that has matured into a legal obligation that may be enforced by the court. *Brinker v. Ludlow*, 379 So.2d 999, 1001 (Fla.Dist. Ct.App.1980). "Suit" has been defined in Black's Law Dictionary 1286 (5th ed.1979), as

> "[a] generic term, of comprehensive signification, referring to any proceeding by one person or persons against another or others in a court of justice in which the plaintiff pursues, in such court, the remedy which the law affords him [or her] for the redress of an injury or the enforcement of a right, whether at law or in equity."

The definition goes on to indicate that the term "suit" is "seldom applied to a criminal prosecution." *Id.*

The civil/criminal aspect of the term "suit" was delineated long over a century ago by the South Carolina Court of Appeals in *State v. Chitty*, 17 S.C.L. (1 Bail.) 379, 389 (1830), where the court noted, "It is true, that the word 'suit,' in its more extended signification, includes a public prosecution; but it is certainly not usually so understood, and no writer would so use it, without otherwise indicating his meaning."

We think it obvious that the Legislature, by limiting its reference to the indemnification of financial losses and legal expenses to those that arise out of any claim, demand, or suit intended that § 9–1–31(a) was to be applied only to civil proceedings. Further evidence of this intent can be found in the statute's exclusionary language that indicates that no indemnification will be provided for conduct that is "wanton, reckless, malicious, or grossly negligent." Those terms usually describe activities, which are considered to be criminal in nature.

Consequently the petition for certiorari is denied and dismissed. The writ previously issued is quashed, and the record of this case is remanded to the Board of Regents for Elementary and Secondary Education with our decision endorsed thereon.

MURRAY, Justice, concurring.

I fully concur in today's result that § 9–1–31(a) excludes reimbursement of legal expenses for criminal charges. Section 9–1–31(a) expressly excludes reimbursement for legal defense costs for acts that are "wanton, reckless, malicious, or grossly negligent." G.L.1956 (1985 Reenactment) § 9–1–31(a). The rationale behind this exclusion is to prevent reimbursement of legal fees accrued in defending against charges that attribute blameworthy behavior to a defendant. It is desirable to protect teachers, supervisors, and administrators from the defense costs of actions delineated by the statute and not protect such personnel where they have intentionally acted wrongfully.

My concern, however, is that the statute in its present form, fails to articulate a provision for reimbursement of legal expenses when frivolous criminal charges are leveled. Frivolous charges are those which are found to be without basis. A teacher should not be made to bear legal defense costs in such a case. However, a teacher would have to pay such costs under the present narrow wording of § 9–1–31(a).

It is the historical practice of the American legal system that each party to a legal action pays its own expenses. 1 Speiser, *Attorneys' Fees*, § 12:3 at 463–67 (Law. Co-op.1973). However, the English practice is just the opposite as it is now customary in England to determine the appropriateness and size of an award of counsel fees after litigation of substantive claims has terminated. *Id.* § 12:7 at 479. There is precedent for the award of counsel fees to the prevailing party in American law. Such allowance of attorneys' fees is in the discretion of a Federal District Court sitting in equity where exceptional circumstances call for the allowance. *Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct.1943, 1945–46, 36 L.Ed.2d 702, 707 (1973); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718–19, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475, 479 (1967).

Modern legislation has increasingly provided for the reimbursement of attorneys'

fees. Our § 9–1–31(a) providing for the indemnification of public school teachers, supervisors, and administrators is but one example of this trend. Provision for attorneys' fees can be found in many federal statutes such as the Fair Labor Standards Act,[1] the Securities Exchange Act of 1934,[2] and title II,[3] title III,[4] and title VII[5] of the Civil Rights Act of 1964.

Under title VII of the Civil Rights Act of 1964, attorneys' fees have been awarded to a prevailing defendant upon a finding that the plaintiff had acted maliciously and in bad faith. *Copeland v. Martinez,* 603 F.2d 981, 983 (D.C.Cir.1979), *cert. denied,* 444 U.S. 1044, 100 S.Ct. 730, 62 L.Ed.2d 729 (1980). In *Copeland,* the plaintiff brought suit charging that she was denied promotions, training, and was harassed because of her race and sex. 603 F.2d at 983. After a trial, the District Court found that the plaintiff had "failed to establish even a *prima facie* case of discrimination." *Id.* The appellate court held that attorneys' fees were properly awarded to the defendant federal government under title VII. *Id.* at 991. Title VII has also been construed to permit an award of attorneys' fees to a private-employer defendant upon a finding that the suit was frivolous. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648, 656 (1978).

While it is true that the violation of a party's civil rights and a criminal accusation against a school teacher are different topics, it is my belief that the *Copeland* case is illustrative for purposes of an expansion and revision of § 9–1–31(a). For example, consider the hypothetical case of a public school teacher who is charged with committing a crime against one of his or her students. The charges are found to be completely without basis. The school teacher is innocent but has incurred substantial legal bills. This scenario raises the question of whether it is just that the school teacher should have to pay for his or her defense costs in the above-described circumstances.

The policy behind § 9–1–31(a) is indispensable to excellent public education. As the duties of our public school teachers and other school personnel require wide student contact, persons so employed are particularly vulnerable to suit. In enacting § 9–1–31(a), the Legislature wished to eliminate this vulnerability. However, as the statute now reads, reimbursement for defense costs against frivolous criminal charges is prohibited. It is my belief that this prohibition is not in accord with the purpose of § 9–1–31(a). It seems appropriate that the Legislature reexamine the statute as presently drafted, since the policy underlying it goes partially unfulfilled.

---

1. 29 U.S.C.A. § 216(b) (West 1965).

2. 15 U.S.C.A. §§ 78i(e), 78r(a) (West 1981).

3. 42 U.S.C.A. § 2000a–3(b) (West 1981).

