DECISION
This matter is before the Court on a request filed by plaintiffs Edwin J. Semper, Jr. and Thomas Oates that the defendant, City of Providence, indemnify them for legal fees they incurred while successfully defending against criminal charges arising out of actions they allegedly took in their capacities as municipal police officers. After consideration of an agreed statement of facts and briefs filed by the parties, this Court denies plaintiffs their requested relief.
 Facts/Travel
The facts pertinent to this Court's consideration of this matter are set forth in the agreed statement of facts filed by the parties. In September 1985, plaintiffs Edwin J. Semper, Jr. (Semper) and Thomas Oates (Oates) were employed as Detective Patrolmen in the Intelligence Bureau of the Providence Police Department. In this capacity, they were assigned duties connected with the handling of protected witness, Peter Gilbert. At the time of his arrest, Mr. Gilbert was a welfare recipient. Oates was directed by Lieutenant Richard Tamburini to have Mr. Gilbert's welfare checks mailed directly to the Providence Police Station. Semper also was directed by Lieutenant Tamburini to handle Mr. Gilbert's financial matters.
On February 28, 1991, plaintiffs were indicted separately on felony charges arising from orders issued by their immediate superior, Lieutenant Tamburini, with respect to their assignment of holding Peter Gilbert in protective custody.[1] As a result of these indictments, plaintiffs were suspended from the Providence Police Department without pay, pursuant to the Law Enforcement Officers' Bill of Rights, G.L. §42-28.6-1, et. seq.[2]
On December 17, 1992, a jury acquitted the plaintiffs of all counts of the first indictment. Thereafter, in April 1993, a special prosecutor dismissed all counts in the remaining indictments, pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure. As a result of being cleared of these charges, Oates and Semper received backpay.
In defending themselves against the allegations charged in the indictments, both plaintiffs incurred substantial legal bills.[3] Oates incurred legal expenses in the amount of $25,000.00 and Semper incurred legal bills in the amount of $18,925.00. Neither Oates nor Semper filed a grievance pursuant to the provisions of their Collective Bargaining Agreement with the City to compel reimbursement of these fees. Before instituting suit, Semper filed a notice of his claim for legal fees with the Claims Committee of the City Council, pursuant to the provisions of G.L. 1956 § 45-15-5. Oates did not file such a claim. Plaintiffs have submitted their case to this Court for decision on stipulated facts and briefs.
 Notice of Claim against the City
At the outset, it should be noted that before bringing their claim against the City, plaintiffs are required to comply with the provisions of G.L. 1956 § 45-15-5, which provides:
 "Every person who has any money due him or her from any town or city, or any claim or demand against any town or city, for any matter, cause, or thing whatsoever, shall take the following method to obtain what is due: The person shall present to the town council of the town, or to the city council of the city, a particular account of that person's claim, debt, damages, or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made to him or her by the town or city treasurer of the town or city within forty (40) days after the presentment of the claim, debt, damages, or demand, the person may commence his or her action against the treasurer for the recovery of the complaint."
Our Supreme Court has stated that G.L. 1956 § 45-15-5 "sets out the steps that every person who has a monetary claim against a municipality must follow." Shackleton v. Coffee `An Service, Inc., 657 A.2d 544, 545 (R.I. 1995) (citing Bernard v. Alexander, 605 A.2d 484, 485 (R.I. 1992)) ("[T]here is no question that § 45-15-5 requires every person who has a monetary claim against a municipality to present to the town or city council a particular account of his or her claim.") "The notice requirement may not be waived voluntarily or involuntarily." Lahaye v. City of Providence, 640 A.2d 978, 980 (R.I. 1994) (citing Batchelder v. White, 28 R.I. 466, 467, 68 A. 320, 320 (1907)).
Despite our Court's unequivocal requirement that notice of the claim must be provided to a municipality, it has determined, however, that if a party fails to file notice it will not invalidate the action or support a motion for judgment on the merits. Provost v. Finlay, 768 A.2d 1256, 1259 (R.I. 2001) ("[T]his Court ruled that the plaintiffs' failure to file a presentment of claim in an action which had been brought within the statute of limitations, would render the action neither a nullity nor untimely."); Blessing v. Town of South Kingstown, 626 A.2d 204, 205 (R.I. 1993).
In the instant matter, plaintiff Semper complied with G.L. 1956 §45-15-5 by filing notice of his claim with the Claims Committee of the City Council. Oates, however, did not provide the City with notice pursuant to the statute. Despite Oates failure to file this notice, such a "defect is amendable." Palumbo v. Yeaw, 636 A.2d 708, 710 (R.I. 1994) (citing Gibbons v. Fitzpatrick, 183 A. 642, 56 R.I. 39 (1936)). "The sanction for having failed to file a notice of presentment and to wait the required period is that the action is subject to dismissal as prematurely brought." Id. at 710 (quoting Blessing v. Town of South Kingstown, 626 A.2d at 205). As to plaintiff Oates, therefore, his action is dismissed as prematurely brought, without prejudice to his refiling his complaint after he complies with the provisions of G.L. 1956 §45-15-5. This Court shall nonetheless proceed to decide this case as to plaintiff Semper.
 The Common Law
Our Supreme Court has stated that "[i]t is the historical practice of the American legal system that each party to a legal action pays its own expenses." Monti v. Warwick School Committee, 554 A.2d 638, 640 (RI. 1989). This common law principal requires a person prosecuted for a crime to pay his own expenses when he has the means of doing so. In the Matter of Chapman v. The City of New York, 61 N.E. 108, 109, 168 N.Y. 80, 85 (1901) (citation omitted). In fact, the Court of Appeals in Chapman equated the duty of a public official to pay his own legal fees in a criminal prosecution with that official's obligation to pay taxes:
 "It is not the duty of the public to defend or aid in the defense of one charged with official misconduct. The history of morals or jurisprudence recognizes no such obligation. When a citizen accepts a public office he assumes the risk of defending himself against unfounded accusations at his own expense. (Emphasis added.) Whoever lives in a country governed by law assumes the risk of having to defend himself without aid from the public, against even unjust attempts to enforce the law, the same as he assumes the burden of taxation. . . . Asking for aid to pay the expenses of a defense already made from one's own resources, is like asking for aid in the payment of taxes or the discharge of any public burden."
Id. at 86, 61 N.E. at 110.
Despite this fundamental cornerstone of the American legal system requiring individuals to pay for their own defenses, statutes may be enacted to require municipalities to reimburse officials for legal fees arising out of a criminal prosecution. See Schieffelin v. Henry,123 Misc. 792, 206 N.Y.S. 172 (1924), aff'd 211 App. Div. 850, 207 N.Y.S. 914. Any such derogation of the common law, however, requires strict construction. Lake v. State, 507 A.2d 1349, 1351 (R.I. 1986); Rhode Island Hospital Trust Co. v. Hodgkin, 48 R.I. 459, 137 A. 381, 383 (1927).
 Status of the Statutory Law in Rhode Island
The Rhode Island General Assembly has not enacted a statute that authorizes indemnification for legal fees incurred by an official as a result of being charged criminally for acts allegedly committed in his or her official capacity where the individual is subsequently found not guilty of the crime.[4] In fact, our Supreme Court has previously addressed this apparent legislative shortcoming in Monti v. Warwick School Committee, 554 A.2d 638 (R.I. 1989). Monti was employed as a school principal in Warwick when he was charged with sexual assault against students at his school. He successfully defended against this indictment and sought reimbursement of his legal bills incurred in contesting these charges. The Court in Monti determined that G.L. §9-1-31, providing indemnification of teachers for legal expenses incurred in suits against them, does not extend to criminal proceedings.[5] Id. at 640. Justice Murray expressed concern, however, in her concurrence that public school teachers and personnel are particularly vulnerable to suit and frivolous criminal charges being leveled against them due to the wide student contact inherent in these positions. Id. at 640. She suggested that the General Assembly eliminate this vulnerability and "reexamine the statute as presently drafted, since the policy underlying it goes partially unfulfilled." Id. at 641. To date, the legislature has taken no action to enact any such amendments to the civil indemnification statutes.
 The Collective Bargaining Agreements
Absent any statute requiring a municipality to indemnify a public official for legal fees incurred in connection with a criminal prosecution, plaintiff's only other recourse is to look to the terms of his Collective Bargaining Agreements with the City for contractual authority requiring the municipality to indemnify him for his legal expenses. It is undisputed among the parties that reimbursement of the plaintiff's legal fees is not provided for in any portion of the applicable Collective Bargaining Agreements. At the time plaintiff was engaged in the activities for which he was indicted, his employment with the City was governed by the 1985-87 Collective Bargaining Agreement and the 1987-89 Collective Bargaining Agreement. Article XVIII of the agreements contains the following provision:
 "Section 1 — COMPLETE UNDERSTANDING
 This agreement constitutes the entire and complete understanding between the City and Providence Lodge # 3 arrived at as the result of collective bargaining, except such amendments hereto or modifications hereof as shall be reduced to writing and executed by the parties following the execution of this agreement."
Thus, the employer/employee relationship between the parties is controlled by the four corners of the document, and any modifications or amendments must be reduced to a writing. There is no provision in the applicable collective bargaining agreements whereby the City agrees to indemnify any police officer for legal expenses incurred as a result of defending a criminal indictment lodged against him or her. The extent of coverage spans to legal representation and professional liability insurance coverage in the amount of $500,000.00 for civil actions only. (Emphasis added). See Article XIV, Section 5, Collective Bargaining Agreement, Providence Lodge # 3. Additionally, union members bargained for prepaid legal benefits to defray the cost of prepaid legal expense insurance.[6] See Article XIV, Section 6, Collective Bargaining Agreement, Providence Lodge # 3. These benefits may be utilized and, in fact, were utilized here for representation in criminal matters.[7]
Thus, the union members did not specifically bargain for the full reimbursement of legal fees incurred while defending criminal prosecutions arising out of actions allegedly taken in their official capacities. Accordingly, plaintiff filed no grievance against the City to recover additional legal expenses.
 The Restatement of Agency
The majority of plaintiff's argument rests upon general principal and agent maxims embodied in the Restatement (Second) of Agency §§ 438, 439 (1958). Section 439 provides in pertinent part:
 "Unless otherwise agreed, a principal is subject to a duty to exonerate an agent who is not barred by the illegality of his conduct to indemnify him for: (d) expenses of defending actions by third persons brought because of the agent's authorized conduct, such actions being unfounded but not brought in bad faith; and (e) payments resulting in benefit to the principal, made by the agent under such circumstances that it would be inequitable for indemnity not to be made."
The plaintiff maintains that at all times he acted within the scope of his authority and that the equities weigh in favor of reimbursing his legal fees. Plaintiff does not rely upon any statutory authority or case law to further this posture and premises his case instead on these agency principals embodied in the Restatement. Despite plaintiff's reliance upon Section 439, it contains the following caveat in Comment (a):
 "This Section states the situations in which the courts are agreed that the principal's duty of indemnity exists. There are other situations in which there are no decisions or in which it is not clear whether or not such a duty exists. Thus, it cannot be stated whether the principal has a duty to indemnify an agent for the expenses of defending . . . unsuccessful criminal prosecutions based on authorized acts." (Emphasis added).
In order to engage in any meaningful principal and agent analysis, the Court must measure this agency law conjointly with the circumstances and facts leading to the criminal prosecutions at issue. Yet plaintiff acknowledges in his brief that "Section 439 does not explicitly apply to the fact pattern in this lawsuit" and he has stipulated to an "Agreed Statement of Facts" that contains a spare recitation of the circumstances leading to the criminal indictments. The argument posited by plaintiff that he was acting as an agent of the City and is therefore entitled to indemnification is not supported by the facts agreed to by the parties.[8] In order to apply the aforesaid agency principles to this matter, it would be necessary for this Court to go beyond the parameters of the "Agreed Statement of Facts" and to examine the scope of plaintiff's employment at the time in question and the methodology by which plaintiff received his orders leading to the indictments in the first place. See e.g., Fernandez v. DeLeno,71 F. Supp.2d 224 (S.D.N.Y. 1999) (court engaged in fact-specific master and servant and scope of employment analysis to find police officers were not entitled to indemnification for attorneys' fees incurred in connection with civil and criminal proceedings against them.) This Court will not engage in the task of fortifying plaintiff's submitted argument with facts dehors those agreed to by and between the parties to this case.
 Analysis
The City maintains that this Court lacks the statutory authority to order indemnification of legal fees in criminal proceedings. It contends that our Supreme Court did not extend the civil indemnification statute in Monti to criminal matters.
A number of courts have agreed that a municipality cannot reimburse an official for legal fees arising out of criminal charges for official misconduct, absent statutory or contractual authority. Zimmer v. Town of Brookhaven, 678 N.Y.S.2d 377, 247 A.D.2d 109 (1998) ("It has been held that in the absence of a statute authorizing it, there is no obligation on the part of a public employer to reimburse an employee for [criminal defense] expenses."); Hall v. Thompson, 669 S.W.2d 905, 283 Ark. 26
(1984) ("Other jurisdictions have also held that [in the absence of a statute] attorney's fees are not recoverable by public officials or employers who are successful in getting charges dismissed."); Guerine v. City of Northlake, 274 N.E.2d 625, 627-28, 1 Ill. App.3d 603, 607 (1971) (In the absence of statute imposing duty upon City to defend policemen charged with criminal offenses, defendants' attorney could not recover his fees from City.); Schieffelin v. Henry, 206 N.Y.S. at 174, 123 Misc. at 794 ("It is not the duty of the public to defend or aid in the defense of one charged with official misconduct.")
Even in the absence of a specific statute permitting indemnification in criminal proceedings, some courts have extended civil indemnification statutes to criminal proceedings, if the conduct in question arises from the performance of official duties. See e.g., Lomelo v. Sunrise,423 So.2d 974, 976 (Fla. Dist.Ct. App. 1982) ("[A] municipal corporation or other public body is obligated to furnish or pay fees for counsel to defend a public official subjected to attack either in civil or criminal proceedings where the conduct complained of arises out of or in connection with the performance of his official duties . . . independent of statute, ordinance or charter."); Sonnenberg v. Farmington Township,197 N.W.2d 853, 854, 39 Mich. App. 446, 449 (1972) ("Where a police officer has successfully defended both civil and criminal charges arising from measures he had taken in the scope of his employment, it would be absurd to limit his possible reimbursement to the civil action only, where both actions might have had their origins in the same incident.")
Our Supreme Court, however, categorically denied applying a civil indemnification statute to a criminal prosecution arising out of the official duties of a public employee. See Monti, supra. Because our Supreme Court did not extend the civil indemnification statute to criminal proceedings in that case based on an agency analysis, this Court believes that it is also precluded from doing so in this case. Absent statutory authority and in view of the holding in Monti, this Court does not have the authority to order the City to reimburse plaintiff's legal fees. Furthermore, plaintiff has failed to prove that he bargained for the benefit of indemnification of legal fees in criminal proceedings in the applicable Collective Bargaining Agreements and has failed to submit a factual record to this Court that would justify indemnification, even assuming an equitable indemnification analysis were permitted.
Accordingly, plaintiff Semper's claim for attorney's fees is denied, and judgment shall enter for the defendant as to his complaint. Plaintiff Oates' claim is dismissed as prematurely brought, without prejudice to his refiling his complaint after he complies with G.L. § 45-15-5. Counsel shall confer and agree upon an appropriate form of order and judgment, reflective of this Court's decision, and submit it to the Court forthwith for entry.
[1] Edwin J. Semper, Jr. was indicted in P1/91-0685 and P1/91-0686. Thomas Oates was indicted in P1/91-0685 and P1/91-0687.
[2] At the time of their suspension without pay as a result of the indictments, both Semper and Oates were receiving injured-on-duty benefits or work-related injury benefits. These benefits ceased. Thereafter, both plaintiffs filed grievances relative to the elimination of these benefits. A panel of arbitrators upheld the decision to eliminate these benefits.
[3] A portion of each plaintiff's legal bills was paid by Midwest Legal Services — a legal services insurance company engaged by the City on behalf of the Fraternal Order of Police, pursuant to the Collective Bargaining Agreement.
[4] Rhode Island does provide indemnity, however, for public officials, employees, or elected officials in the civil arena, pursuant to G.L. § 45-15-16, which provides in part:
 "Any town or city council or any fire district may, by ordinance or otherwise, indemnify any and all elected or appointed fire district officials, public employees, fire district employees, officials, members of boards, agencies and commissions . . . from all loss, cost, expense, and damage, including legal fees and court costs, if any, arising out of any claim, action, compromise, settlement, or judgment by reason of any intentional tort or by reason of any alleged error or misstatement or action or omission, or neglect or violation of the rights of any person under any federal or state law, including misfeasance, malfeasance, or nonfeasance or any act, omission, or neglect contrary to any federal or state law which imposes personal liability on any elected or appointed fire district official, employee, official, or member, if the elected or appointed fire district official, employee, official, or member, at the time of the intentional tort or act, omission or neglect, was acting within the scope of his or her official duties or employment."
In contrast, the Connecticut Legislature has enacted a specific statute to reimburse police officers for legal expenses incurred defending against criminal charges, which provides in pertinent part:
 "Whenever, in any prosecution of an officer of the division of state police . . . or a local police department for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer found not guilty, such officer shall be indemnified by his employing governmental unit for economic loss sustained by him as a result of such prosecution, including the payment of any legal fees necessarily incurred." See Conn. Gen. Stat. § 53-39a.
[5] The civil indemnity statute for public school teachers, supervisors, and administrators, G.L. § 9-1-31, provides in pertinent part:
 "(a) Each school committee and the board of regents shall protect and save harmless
 (5) any employee of the board of regents from financial loss and expense, including legal fees and costs, if any, arising out of any claim, demand or suit for actions resulting in accidental bodily injury to or death of any person, or in accidental damage to or destruction of property, within or without the school building, or any other acts, including but not limited to infringement of any person's civil rights, resulting in any injury, which acts are not wanton, reckless, malicious, or grossly negligent, as determined by a court of competent jurisdiction, provided the teacher, supervisor, or administrator, at the time of the acts resulting in such injury, death, damages or destruction, was acting in the discharge of his or her duties or within the scope of his or her employment or under the direction of such school committee or the board of regents."
[6] Section 6 provides in pertinent part: "The City agrees to assume the cost for each member of the bargaining unit coverage for prepaid legal expense insurance provided by the Prepaid Legal Service Corporation of Rhode Island along with the Law Enforcement Officers' Professional Legal Expense Endorsement."
[7] As noted earlier, a portion of plaintiff's legal bills were paid by a legal services insurance company engaged by the City on behalf of the Union. The reimbursement sought in the instant matter pertains to the portion of legal expenses in excess of the fees covered by the prepaid program.
[8] It is worth noting that plaintiff has attempted to recite a number of facts in his brief that are not part of the Agreed Statement of Facts.